## A96A2167. OXLEY v. KILPATRICK et al.
(510 SE2d 99)

BEASLEY, Judge.

In *Oxley v. Kilpatrick*, 225 Ga. App. 838 (486 SE2d 44) (1997), we reversed the trial court's grant of motions for summary judgment filed by Dr. Rossi and his two co-defendants. The Supreme Court granted certiorari and reversed our holding that Dr. Rossi was not entitled to summary judgment. *Rossi v. Oxley*, 269 Ga. 82 (495 SE2d 39) (1998). Accordingly, our judgment in this case is vacated as to Dr. Rossi, and the judgment of the Supreme Court is made the judgment of this Court.

*Judgment affirmed in part and reversed in part. Senior Appellate Judge Harold R. Banke concurs. Blackburn, J., concurs specially.*

BLACKBURN, Judge, concurring specially.

I concur in the judgment of the majority, as we are bound by the decisions of our Supreme Court. I concur specially to point out flaws in the procedures by which cases are analyzed and ruled upon in the appellate courts of Georgia.

The Supreme Court has rejected the majority's holding that Dr. Kilpatrick's misrepresentations to plaintiff tolled the statute of limitation as to Dr. Rossi also as they were engaged in a joint venture. As any actionable negligence under the facts in this case was largely attributable to Dr. Rossi, the effect of the Supreme Court's ruling is to leave plaintiff with an essentially empty right to proceed against the remaining physician in the action.

As addressed in the special concurrence in *Oxley v. Kilpatrick*, 225 Ga. App. 838, 842 (486 SE2d 44) (1997), Dr. Rossi advised plaintiff that " 'he was Kilpatrick and Moore's associate, the third associate in the practice.' " On cross-examination, plaintiff was asked: " 'Q. And how did (Dr. Rossi) identify himself? A. He was Dr. Rossi, third associate in Kilpatrick's practice.' " Dr. Kilpatrick also considered that Dr. Rossi was providing services in his stead, based upon their mutual arrangement of each caring for the other's patients. Dr. Rossi personally acknowledged that he considered himself to be Oxley's doctor during the period he treated her and that he was responsible for her care.

This was an appeal from the grant of summary judgment to the physicians. Summary judgment is appropriate only when the court, *viewing all the facts and reasonable inferences from those facts, in a light most favorable to the non-moving party*, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). For summary judgment purposes, Dr. Rossi and Dr. Kilpatrick *were partners as a matter of law*, who were jointly treating Oxley. This is

true regardless of the Supreme Court's ruling on the joint venture holding of the majority.

Here, the Supreme Court has failed to apply the "right for any reason" doctrine in its analysis of the holding of this Court. This case demonstrates the danger of our Supreme Court limiting its certiorari review to a narrow issue, without scrutinizing the case thereafter under the "right for any reason" doctrine. Unless the Supreme Court intended to overrule *Lau's Corp.*, and reinterpret the clear meaning of OCGA § 9-11-56, it must be concluded that, in reversing our opinion on a narrow issue, the resulting opinion is wrong as a matter of law.

This case also makes apparent another flaw in this Court's rules governing the analysis and drafting of its opinions. Under the procedures of the Court of Appeals, our judges sit in three-judge panels. Cases are assigned to individual judges who author the proposed opinion and circulate it to the remaining two judges on the panel. If either of the two reviewing judges on the panel has a different view from that of the author, such position is reduced to writing. If such writing would result in a different judgment line, the writing becomes a dissent and circulates "whole court." If the writing would not result in a different judgment line, then the writing becomes a "special concurrence" and the case does not circulate outside the panel. The importance of this distinction is that the majority position on this issue is only a two-judge opinion. Clearly, "whole court" circulation rather than a two-judge opinion increases the likelihood of the disputed issue being rightly decided initially. The flaw in our procedures becomes obvious when it is realized that the same rule would apply even if the third judge had concurred in the special concurrence rather than the majority, so long as the judgment line would not be different. Under such a circumstance, there would be a "majority" of one. We do not apply this principle in "whole court" cases, where the majority is the position with the most votes.

These rules also ignore the fact that different analyses which would require the same judgment line under our Court's interpretation might have a different legal effect upon the case subsequently in the trial court. See *Gen. Motors Corp. v. Conkle*, 226 Ga. App. 34 (486 SE2d 180) (1997), a two-judge majority by which the trial court was precluded from imposing the sanction of dismissal of defendant's answer, upon remand, while under the special concurrence, the trial court would not have been so limited. It is simply inaccurate to contend that the opposing views are essentially the same when their relative effect on the rights of the parties and in the trial court is totally different. Under our rules, a single authoring judge would control the rights of the parties and the subsequent effect of the opinion in the trial court, even had the third judge joined the special concurrence.

While the "judgment line" rule will generally have an appropriate result, it often will not, and justice should not be sacrificed for the efficiency of a black and white rule.

While the "judgment line" rule is an appropriate first step in the analysis of the relative positions of the authors, the addition of a second step, which then determines whether or not the different positions would have a significantly different impact on the rights of the parties or the actions of the trial court upon the issuance of our opinion, would enable this Court to appropriately address those situations where the application of step one does not permit the resolution of the different effect of the conflicting positions. If there would be no significant difference in the effect of the positions, then the writing should be treated as a special concurrence. If there would be a significant difference in the effect of the positions, the writing should then be treated as a dissent and circulated "whole court."

Similarly, where there is a conflict between the analyses of two judges in a three-judge panel case, the majority opinion on the issue in conflict should be that of the position receiving two of the three votes on the panel. This principle is generally applied by our Court in "whole court" cases. Often there are special concurrences which do not conflict with the majority opinion, and such concurrences would not be affected under the above adjustments to our procedures. These rule changes would avoid the absurdity of having a one-judge "majority" or two-judge Court of Appeals opinions. Our Supreme Court is not required to consider a special concurrence when reviewing the one- or two-judge "majorities," and where, as here, they do not do so, the inclusion of a special concurrence is of no effect, even if it provides the appropriate legal result.

The rules of the appellate courts of Georgia should be structured and applied so as to do justice. Where such structure and application result in a holding that is wrong as a matter of law, justice has not been served.

DECIDED DECEMBER 2, 1998 —
RECONSIDERATION DENIED DECEMBER 16, 1998.

*Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Gary C. Christy, Steven K. Leibel*, for appellant.

*Love & Willingham, Daryll Love, Michael J. Hannan III, Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Brian R. Neary, Leslie B. Zacks*, for appellees.